IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNY GONZALES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-0685-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Plaintiff Johnny Gonzales ("Gonzales") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

Gonzales filed an application for DIB and SSI under Titles II and XVI of the Act in September 2011, alleging a disability beginning June 10, 2010 due to liver failure, hepatitis C, and severe headaches. The Commissioner denied Gonzales' application initially and on reconsideration. Following a hearing, the administrative law judge ("ALJ") found that Gonzales is "not disabled." The Appeals Council denied Gonzales' request for review, and the ALJ's decision became the final decision of the Commissioner.

In making his decision, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 416.920(a).   At step one, he found that Gonzales has not engaged in substantial gainful activity since June 10, 2010, his alleged onset date.   At step two, the ALJ found that Gonzales has severe impairments of lung disease and a history of hypertension exacerbated by his weight.   At step three, the ALJ found that Gonzales' impairments failed to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.   The ALJ found that Gonzales has the residual functional capacity ("RFC")

> to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).   Specifically, he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand or walk 6 hours in an 8-hour workday.   His postural and other work functions are not affected.

R. 48.   At step four, the ALJ found that Gonzales is capable of performing his past relevant work as a supervisor landscaper, which does not require the performance of work-related activities precluded by Gonzales' RFC.   Because the ALJ concluded at step four that Gonzales had not been under a disability, as defined in the Act, at any time from June 10, 2010 (the alleged onset date) through November 26, 2013 (the date of the ALJ's decision), he did not proceed to step five.

Gonzales maintains on three grounds that the Commissioner's decision must be reversed: first, the ALJ failed to adequately account for Gonzales' mental health problems, both by not finding that such problems are severe impairments and by not including any

mental limitations in the RFC; second, the ALJ calculated the RFC without performing a function-by-function assessment of Gonzales' limitations and without the opinion of an acceptable medical source; and, third, the ALJ determined that Gonzales could perform his past work as a supervisor landscaper, without explaining how he arrived at this classification of his past work and without making specific findings as to the physical and mental demands of his past work.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the Commissioner follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the

Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).[1]

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per

---

[1]Step five is not at issue in this case.

- 5 -

curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.*  Reversal of the Commissioner's decision is appropriate, however, "only if the applicant shows that [she] was prejudiced." *Id.*  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Gonzales maintains that the ALJ failed to adequately take into account his mental health problems.  This argument rests on two premises: first, the ALJ did not sufficiently consider evidence that Gonzales suffers from severe mental impairments; and, second, the ALJ erred by not including any mental limitations in the RFC determination.

A

1

Gonzales asserts that, although the ALJ purported to apply the correct legal standard at step two, the record lacks substantial evidence to support the ALJ's finding that his bipolar disorder and antisocial personality disorder are non-severe impairments.  Rather, he contends that the evidence in the record shows that his mental impairments are severe.  Gonzales relies on evidence that Dallas Metrocare Services ("Metrocare") repeatedly discontinued and reinitiated multiple medications in unsuccessful attempts to control his symptoms; that he

- 6 -

was treated for, and ultimately diagnosed with, bipolar disease; that in his application for disability benefits, he alleged disability, in part, due to depression; that he testified about his anger outbursts, criminal history, difficulty conforming to societal norms, avoidance of others, and difficulty completing a conversation; that many clinical findings suggested that his mental impairments are severe; and that consultative examiner, Stephanie Hall, Psy. D. ("Dr. Hall"), found that Gonzales had limited attention and concentration, a blunted mood, and an inability to perform reverse serial sevens or recite the alphabet.

The Commissioner responds that the ALJ carefully reviewed the evidence pertaining to Gonzales' mental health problems and properly found that these problems are not severe impairments. She points out that Gonzales never sought mental health treatment; rather, the Salvation Army referred him for treatment after he tested positive for the use of methamphetamine. The Commissioner also relies on Gonzales' testimony that he had experienced depression since 2002, many years before he stopped working, and that he quit his previous job for reasons unrelated to his alleged impairments. The Commissioner also maintains that the medical evidence in the record reflects no severe mental impairments because, other than a few abnormalities that Gonzales relies on, the record repeatedly notes cooperative behavior, normal speech, no psychosis, euthymic mood, fair insight, fair judgment, organized thoughts, and intact memory. The Commissioner asserts that most of Dr. Hall's findings were normal, and that she ultimately concluded that Gonzales had "sufficient ability to make occupational, personal, and social adjustment." D. Br. 6 (quoting

R. 383).

2

At step two, the ALJ considers whether the claimant suffers from any severe medically determinable physical or mental impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c) (2012).  To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Astrue*, 406 Fed. Appx. 899, 903 (5th Cir. 2010) (per curiam).  A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c) ("Severity Regulation").  A literal interpretation of the Severity Regulation would be inconsistent with the Act, however, because it would sometimes lead to the denial of benefits to claimants unable to perform substantial gainful activity. *See Stone v. Heckler*, 752 F.2d 1099, 1101-03 (5th Cir. 1985).  Accordingly, an ALJ may properly conclude that an impairment is not severe only after expressly finding that it "is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Id.* at 1101 (alteration in original) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) (per curiam)).

In addition to the severity standard that is used to evaluate all impairments, the ALJ must follow an even more precise standard when evaluating the severity of a claimant's mental impairments. *See* 20 C.F.R. § 404.1520(a).  This evaluation process is often referred

to as the "special technique" or the "technique." *See, e.g., Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) (per curiam) (citing to 20 C.F.R. § 404 .1520(a)). The special technique requires that the ALJ first consider whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(1). Once the ALJ finds that a claimant has a mental impairment, he must rate the degree of functional limitation resulting from the impairment pursuant to the categories identified in paragraphs A, B, and sometimes C, of the adult mental disorders listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(2), (c). Paragraph B contains four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(b)(2), (c)(3); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00C. The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The fourth functional area is rated on a four-point scale ranging from "none" to "four or more" episodes. *Id.* After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 416.920a(d). If the degrees of limitation in the first three areas are "none" or "mild," and the degree of limitation in the fourth area is "none," "the ALJ must find the impairment 'not severe,' which generally concludes the analysis and terminates the proceedings." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing to 20 C.F.R. § 404.1520a(d)(1)).

3

The court concludes that substantial evidence in the record supports the ALJ's determination that Gonzales' mental impairments are not severe.  The ALJ evaluated Gonzales' impairments under the de minimis standard of *Stone* and the special technique and found that Gonzales' degree of limitation in the first three functional areas is "within normal limits" with "only mild limitations," and that the degree of limitation in the fourth functional area is "none."  The ALJ therefore concluded that Gonzales has no severe mental impairment and that his bipolar disorder, which is fully controlled by medication, is a non-severe impairment.  *See Boyd*, 239 F.3d at 705 (citing to 20 C.F.R. § 404.1520a(d)(1)) (explaining that if degrees of limitation in first three areas are "none" or "mild," and degree of limitation in fourth area is "none," "the ALJ must find the impairment 'not severe,' which generally concludes the analysis and terminates the proceedings").

In reaching this conclusion, the ALJ discussed and relied on the disability report, which states that Gonzales did not have difficulty with hearing, reading, breathing, understanding, coherency, concentration, talking, or answering, or other difficulties; the functional report, in which Gonzales alleged some physical limitations but no mental limitations; and medical records from Parkland Memorial Hospital ("Parkland") concluding that Gonzales "is reported normal from a psychiatric point." R. 51 (citing R. 565 (explaining that, with respect to his "psychiatric," Gonzales "has a normal mood and affect," and "[h]is behavior is normal")).  The ALJ also discussed an "unremarkable" mental status examination

conducted by a Metrocare physician assistant[2] on October 17, 2011, in which Gonzales

reported sad mood, low motivation, and mild irritability, denied manic highs, and stated that

he had been doing fairly well.  The physician assistant also noted that Gonzales had been

compliant with medications.  As the ALJ points out, this Metrocare examination, as well as

another Metrocare mental status examination conducted by an advanced nurse practitioner

on January 10, 2012, concluded that Gonzales had fair insight, judgment, and impulse

control, intact memory, normal speech, cooperative behavior, and organized thought, and that

Gonzales was well groomed.  The ALJ also summarized the findings of Dr. Hall's

psychological examination:

> [Gonzales] is able to handle activities of daily living while
> living in his sister's house.  Social activity is with his family
> members.  Mental status examination showed [Gonzales] was
> dressed appropriately and paid adequate attention.  He possessed
> an adequate fund of general information given his reported
> academic achievement.  Memory was intact and emotional
> expression was appropriate.  No thought disorder, judgment was
> fair and insight was limited.  After evaluating [Gonzales], Dr.
> Hall diagnosed bipolar II disorder; cocaine abuse, early full
> remission; cannabis abuse, sustained full remission and
> antisocial personality disorder.  Dr. Hall assigned a GAF of 62
> with a fair prognosis and indicating that [Gonzales'] bipolar
> symptoms were going to improve and remit but expects the
> course of treatment will be comprised by continued use of
> cocaine or being incarcerated again.

---

[2]In discussing this October 17, 2011 mental status examination, the ALJ states that "Dr. Hall noted that [Gonzales] reports sad mood, low motivation, and mild irritability."  R. 50.  But the ALJ cites the Metrocare report in the record, which clearly shows that a physician assistant, not Dr. Hall, conducted this exam.

R. 50.  Dr. Hall ultimately concluded that, "[b]ased on the current evidence obtained during this examination, [Gonzales] is demonstrating sufficient ability to reason and to make occupational, personal, and social adjustments."  R. 383.  The ALJ also explained that state agency medical consultant, Susan Thompson, M.D. ("Dr. Thompson"), completed a psychiatric review technique assessment on November 22, 2011, and opined that Gonzales has non-severe impairments of bipolar disorder, cocaine and cannabis abuse in remission that causes only mild restrictions in activities of daily living, in difficulties in social functioning and in concentration, persistence, or pace and no extended episodes of decompensation.  And the ALJ stated that he accepted Dr. Thompson's ultimate conclusion that Gonzales' mental impairments are non-severe because this conclusion is consistent with the subsequently added medical evidence and the record as a whole.  Accordingly, the court concludes that substantial evidence supports the ALJ's determination that Gonzales does not have a severe mental impairment.

B

1

Gonzales also contends that, even if the ALJ properly found that his mental impairments are not severe, the ALJ still should have included limitations resulting from his mental impairments in Gonzales' RFC.  He asserts that the RFC must reflect both severe and non-severe impairments, and even if an impairment is non-severe, the RFC determination must include limitations associated with that impairment.  Gonzales also maintains that the

record shows that he has work-related mental limitations resulting from his mental impairments.  He points out that his alleged disability is in part due to depression, he testified that he had anger outbursts and difficultly completing a conversation, and he reported that he had an extensive criminal history and avoided others.  Gonzales also maintains that the ALJ found that his bipolar disorder, while not severe, resulted in mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, but the ALJ did not explain why the RFC failed to contain any psychological limitations.

The Commissioner responds that the ALJ thoroughly considered Gonzales' alleged mental impairments and properly excluded any mental limitations from the RFC because the record reveals no evidence of functional limitations.

2

The court holds that substantial evidence supports the ALJ's determination not to include any mental limitations in the RFC.  Although the ALJ found that Gonzales' bipolar disorder is a non-severe impairment, "the ALJ must still consider the impact of [Gonzales'] non-severe mental impairments—either singly or in combination with other conditions—when he determines [his] RFC."  *Williams v. Astrue*, 2010 WL 517590, at *8 (N.D. Tex. Feb. 11, 2010) (Fitzwater, C.J.) (citing 20 C.F.R. § 404.1545(a)(2)).  The ALJ's decision demonstrates that he took into account Gonzales' mental impairments when performing his RFC analysis.  Before formulating the RFC, the ALJ noted that Gonzales

complained of depression, bipolar, and anxiety at the administration hearing. The ALJ analyzed the paragraphs B and C criteria, determined that Gonzales has no severe mental impairment, and listed "bipolar disorder (fulling controlled by medication)" as a non-severe impairment that causes "no functional limitations to basic work activities." R. 48 (parenthesis in original). The ALJ also explained that

> [t]he limitations identified in the "paragraph B" and "paragraph C" criteria are not a [RFC] assessment, but are used to rate the severity of mental impairments at steps 2 and 3 . . . . The mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broader categories found in paragraphs B and C . . . . However, the above "B" and "C" criteria findings translate into the [RFC] assessment of no impairment in basic mental work requirements. [Gonzales'] mental function, as stated, is within normal limits.

R. 48. Additionally, as discussed *supra* at § III(A)(3), when the ALJ analyzed Gonzales' RFC, he discussed the Parkland and Metrocare mental health records, psychological examinations conducted by Drs. Hall and Thompson, and Gonzales' testimony and reports regarding his mental impairments. The ALJ also noted that none of Gonzales' treating physicians recommended any serious restrictions. Accordingly, the court concludes that the ALJ sufficiently considered Gonzales' mental impairments in calculating the RFC, and did not err by not including any mental limitations in the RFC.[3]

---

[3]Gonzales' reliance on *Williams* is misplaced. In *Williams* the court held that the ALJ failed to fully analyze every impairment of which he was aware. *Williams*, 2010 WL 517590, at *7. The court also concluded that "the ALJ's determination that [the claimant] does not have a severe mental impairment—while drawing unexplained conclusions and failing to

IV

Gonzales contends that the ALJ's RFC finding is deficient as a matter of law for two reasons: first, the ALJ formulated the RFC without performing the required function-by-function analysis; and, second, when the ALJ determined how Gonzales' impairments affect his ability to work, he did so without an opinion from a medical source.

A

1

Gonzales maintains that the ALJ formulated his RFC without performing the function-by-function analysis required by *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1, 3-6 (S.S.A. 1996) (hereinafter "SSR 96-8p").  He posits that the ALJ found that his lung disease is a severe impairment, and that, although his bipolar disorder is non-severe, he has mild limitations in his ability to carry out activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace.  And Gonzales posits that, by failing to conduct the function-by-function analysis, the ALJ failed to address any environmental limitations associated with his lung disease, and any mental limitations associated with his mental impairments.

---

mention relevant facts from the record—is not supported by substantial evidence." *Id.* at *8. *Williams* is inapposite because, in the present case, the ALJ adequately analyzed Gonzales' mental impairments by discussing and considering facts in the record addressing such impairments and drawing conclusions based on those facts.

The Commissioner responds that the ALJ's decision comports with SSR 96-8p because it considered the totality of the medical evidence, and no records support a contrary conclusion, and she posits that substantial evidence supports the ALJ's RFC determination.

2

SSR 96-8p requires that, before making an RFC determination, the ALJ perform a function-by-function assessment of the claimant's capacity to perform sustained work-related physical and mental activities "based upon all of the relevant evidence," taking into account "both exertional and nonexertional factors." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (citing SSR 96-8p). But an ALJ's decision complies with SSR 96-8p when it considers the totality of the medical evidence and no records support a contrary conclusion. *See Porter v. Barnhart*, 200 Fed. Appx. 317, 319 (5th Cir. 2006) (per curiam); *Williams v. Barnhart*, 70 Fed. Appx. 183, 184 (5th Cir. 2003) (per curiam). In *Porter* the claimant maintained that the ALJ committed prejudicial legal error in calculating the RFC, in part because the ALJ "fail[ed] to address his alleged limitations in manipulation and gripping through a function-by-function analysis" and thus "did not comply with [SSR 96-8p]." *Porter*, 200 Fed. Appx. at 319. The Fifth Circuit held, however, that

> [t]he ALJ complied with SSR 96-8p by considering all of the medical evidence, including the testing performed by the chiropractor, and [the claimant's] subjective complaints of pain. The ALJ analyzed each alleged impairment in detail. The ALJ concluded that this evidence demonstrated that [the claimant] "retain[ed] the functional capacity to perform the exertional demands of sedentary work . . . ." The medical opinions did not warrant a contrary decision.

- 16 -

*Id.* (some alternations in original).  In *Williams* the claimant argued that "the Commissioner erred by failing to conduct a function-by-function analysis in light of all [her] impairments," and the Fifth Circuit held that, "[a]lthough the Commissioner did not consider each function of [the claimant's] past work, there was no conflicting evidence and substantial evidence supported the Commissioner's finding." *Williams*, 70 Fed. Appx. at 184 (citing *Myers*, 238 F.3d at 620; *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

3

The court holds that the ALJ's decision complies with SSR 96-8p.  Although the ALJ did not perform a function-by-function analysis, he considered all of the medical records, and no records support a contrary conclusion.  *See Porter*, 200 Fed. Appx. at 319; *Williams*, 70 Fed. Appx. at 184.  The ALJ thoroughly discussed the Metrocare and Parkland records, and Dr. Hall's and Dr. Thompson's reports, and he noted that the treatment records "reveal[ed] no serious restrictions recommended by the treating physicians." R. 51.  Moreover, Gonzales does not cite any medical records that the ALJ failed to consider in formulating the RFC or any records or other evidence, other than his own statements, that support a contrary RFC finding.  And Gonzales does not argue that the ALJ erred by discrediting his statements.

The ALJ's decision shows that he considered Gonzales' lung disease and mental impairments when formulating the RFC, and substantial evidence supports the ALJ's decision not to include environmental and psychological limitations in the RFC.  The court has already discussed and reached this conclusion with respect to Gonzales' mental

impairments, *see supra* at § III(B)(2), and the court will therefore limit its discussion to Gonzales' lung disease. As a general matter, there is "no inherent contradiction in finding that [Gonzales'] [lung disease] is severe at step two and also finding that he has no exertional limitations on working." *Boothe v. Colvin*, 2013 WL 3809689, at *6 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.) ("Because the ALJ determines whether an impairment is severe without regard to the individual's age, education, or work experience, finding that an impairment is severe does not of itself mean that the impairment affects the claimant's ability to work."). In determining the RFC, the ALJ noted that Gonzales complained of lung disease at the administrative hearing. He then explained that, although Gonzales has "a past history significant for lung disease," chest Xrays taken at Parkland on January 27, 2010 and July 21, 2011 showed that his "lungs [were] clear," and that there was "no significant change" between these Xrays. R. 49. And another exam on August 17, 2011 showed that his "lungs were clear" and his "chest x-ray [was] normal." *Id.* Additionally, the ALJ relied on Gonzales' statement to Dr. Hall that he had "an inability to work since 2010 because [he] was working for a company that went out of business," not because of any limitations associated with his lung disease (or other impairments). R. 50.

Other evidence in the record also supports the ALJ's decision not to include any limitations for Gonzales' lung disease. Parkland records dated January 27, 2010 reflected that, with respect to Gonzales' "pulmonary/chest," he had "[e]ffort normal and breath sounds normal. No respiratory distress. He had no wheezes." R. 299. Additionally, at the

- 18 -

administrative hearing, when the ALJ asked Gonzales why he could not perform his past work, Gonzales responded that he is more edgy and not as good at explaining things to other people as he used to be, but did not testify to any physical limitations.

Moreover, the two cases that Gonzales relies on to support his argument that the ALJ was obligated to include mental limitations in the RFC determination—*Tusken v. Astrue*, 2010 WL 2891076 (N.D. Tex. May 25, 2010) (Cureton, J.), *rec. adopted*, 2010 WL 2891075 (N.D. Tex. July 20, 2010) (McBryde, J.), and *Ellis v. Astrue*, 2010 WL 3422872 (N.D. Tex. July 27, 2010) (Stickney, J.), *rec. adopted*, 2010 WL 3398257 (N.D. Tex. Aug. 27, 2010) (O'Connor, J.)—are distinguishable.  In *Ellis* the court held that the hypothetical question posed to the vocational expert ("VE") was deficient.[4]  *Ellis*, 2010 WL 3422872, at *5.  Here, the ALJ did not pose a hypothetical question to a VE, so *Ellis* does not apply.  In *Tusken* the court concluded that the ALJ erred by not considering the limiting effects of all the claimant's impairments, even his non-severe impairments.[5]  *Tusken*, 2010 WL 2891076, at

---

[4]In *Ellis*, although the ALJ found that the claimant had *mild* restriction in activities of daily living and social functioning, and *moderate* deficiencies in concentration, persistence, or pace, he posed a hypothetical question to the VE describing a person with *no* restrictions in activities of daily living and social functioning, and *mild* deficiencies in concentration, persistence, or pace.  *Ellis*, 2010 WL 3422872, at *5.  The court concluded that "[a] significant discrepancy exist[ed] between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision," and because the hypothetical question needed to reasonably include all recognized limitations, including the non-exertional limitations recognized by the ALJ, the hypothetical was deficient.  *Id.*

[5]This statement is dicta.  The court in *Tusken* overruled the ALJ's decision at step two, which found that the claimant's mental impairment was not severe, held that her mental impairment was severe, and ordered the ALJ to reformulate the claimant's RFC to include her severe mental impairment.  *Tusken*, 2010 WL 2891076, at *11.

*12.  By contrast, the court has already held in this case that the ALJ adequately discussed and considered the limiting effects of Gonzales' mental impairments in formulating his RFC. *See supra* at § III(B)(2).  Accordingly, the court holds that the ALJ complied with SSR 96-8p and substantial evidence supports the ALJ's RFC determination.

B

1

Gonzales next maintains that the ALJ erred by determining that he can perform "light work," without a physician's indicating that he could do so.  Gonzales contends that the ALJ, as a layman, lacks the qualifications to determine how an impairment results in work-related limitations, and that only medical practitioners are qualified to make such a determination. He also posits that the raw medical data in the record establishes that Gonzales has impairments, but does not clearly establish the effect of these impairments on his ability to work, and there is therefore no evidence in the record of any work-related limitations, much less of the "light exertional" category.

The Commissioner responds that an RFC finding is a legal conclusion and that determining the RFC is the sole responsibility of the ALJ.  She further contends that the ALJ was not required to seek the opinion of a medical practitioner when assessing Gonzales' limitations.  And the Commissioner posits that the ALJ properly made the RFC determination based on all of the relevant medical and other evidence in the record, and that substantial evidence supports the ALJ's RFC determination.

2

"Under the regulations and our case law, the determination of [RFC] is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam) (citing *Ripley*, 67 F.3d at 557); *see also* 20 C.F.R. § 404.1546(c).  The ALJ "is responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985) (citing *Jones v. Heckler*, 702 F.2d 616, 616 (5th Cir. 1983)).  The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record.  20 C.F.R. § 404.1545(a)(1).  "Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing.  The absence of such a statement, however, does not, in itself, make the record incomplete."  *Ripley*, 67 F.3d at 557 (citing 20 C.F.R. § 404.1513(b)(6) (1994)).  "[W]here no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.*; *see also Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (per curiam) (holding that ALJ's determination of claimant's RFC to perform a modified level of light work was "based on substantial evidence even without such a medical opinion").

3

The court concludes that the ALJ did not err in determining the RFC without the opinion of a medical source on Gonzales' ability to work.  This is so because, although there is no statement from a medical source describing the types of work that Gonzales is capable

of performing, the ALJ's conclusion that Gonzales can perform "light work" is supported by substantial evidence.  The ALJ found that Gonzales' lung disease and history of hypertension exacerbated by his weight are severe impairments, and that Gonzales' "collar bone and shoulder pain, migraines (subjective complaints not medically determinable but still considered in conjunction with [medically determinable impairments]), bipolar disorder (fully controlled by medication) and cocaine and cannabis abuse (in remission) are, singly and in combination, non-severe" impairments, which "effect no functional limitations to basic work activities."  R. 46 (parenthesis in original).[6]  The ALJ ultimately concluded that "[n]othing suggests a physical inability to work," and that Gonzales "does not have an impairment, singly or in combination, of such severity as to preclude the performance of light work."  R. 51-52.

In reaching this decision, the ALJ considered numerous medical reports from Parkland and Metrocare that largely concluded that Gonzales' impairments did not cause any functional limitations.  *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (per curiam) ("The mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired by her back trouble that she was precluded from engaging in any substantial gainful activity.") (citing other cases).  For example, the ALJ cited reports concluding that Gonzales had a normal heart, clear lungs, no pulmonary abnormalities, no

---

[6]Because Gonzales only challenges the ALJ's determination as to his physical limitations in this section, the court will only address physical limitations here.

shortness of breath, no chest pain, normal gait, full range of motion, normal grip strength, no evidence of cirrhosis or portal hypertension, and normal blood pressure with his medication.[7] He further noted that none of Gonzales' treating physicians recommended any serious restrictions.

In addition to the medical evidence, the ALJ considered Gonzales' appearance and demeanor, as well as his testimony, which also revealed no functional physical limitations. The ALJ explained that Dr. Hall's report noted that Gonzales "stated an inability to work since 2010 because [he] was working for a company that went out of business," not because of any physical limitations, and that he performs side jobs, such as mowing lawns or running errands—jobs where he does not have to be involved with a lot of people. R. 50 (citing R.

[7]The ALJ discussed the following Parkland medical records: (1) a report dated October 10, 2011 that revealed a 1.7 centimeter mass in the right lobe of the liver, and gallstones, but no evidence of cirrhosis; (2) a chest Xray dated July 21, 2011 that showed clear lungs, normal heart, normal mediastinum, some degenerative change in the thoracic spine, and no significant cardiopulmonary radiographic abnormality; (3) a physical exam conducted August 17, 2011 that showed normal heart, clear lungs, unremarkable blood pressure (130/89), no shortness of breath, no chest pain, no fever, normal gait, full range of motion, normal grip strength, normal EKG, normal chest Xray, positive for hepatitis C, and otherwise normal laboratory results, as well as a normal neurological exam (conducted at prior office visit); (4) a record dated October 26, 2011 that revealed a normal stress test, a CT scan of the head showing sinusitis but that was otherwise normal, and a CT scan of the abdomen showing no evidence of cirrhosis or portal hypertension, but three lesions in the liver; (5) a CT scan of the head dated August 22, 2011 that revealed no evidence of acute intracranial abnormality and air-fluid level in the left maxillary sinus; and (6) a record dated November 9, 2011 in which Gonzales reported heartburn after eating, but denied present pain, and also reported chest pain the past two nights, but denied present pain and shortness of breath, and revealed elevated blood pressure (131/95) due to Gonzales' not taking his medication; an unremarkable physical examination; and an assessment of heartburn, hepatitis C carrier, and benign hypertension.

379).  Dr. Hall's report also stated that Gonzales takes care of his sister's yard.  And at the administrative hearing, when the ALJ asked Gonzales why he could not perform his past work, Gonzales testified that he is more edgy and not as good at explaining things to other people as he used to be, but he did not specify any physical limitations.  *See Gutierrez*, 2005 WL 1994289, at *7 (explaining that substantial evidence supported ALJ's determination that claimant could perform modified level of light work, even without any medical opinion, because ALJ properly made adverse credibility determinations against claimant and based his determination that claimant retained RFC to perform at least part of her past relevant work on evidence in the record, including her testimony in response to ALJ's questions about past work).  Accordingly, the court holds that the ALJ did not err in determining the RFC without the opinion of a medical source as to Gonzales' ability to work, and that substantial evidence supports the ALJ's conclusion that Gonzales can perform, at a minimum, light work.

4

Furthermore, even assuming *arguendo* that the ALJ erred by failing to fully develop the record, the court will only reverse the ALJ's decision when the claimant demonstrates that he was prejudiced by this failure.  *See Gutierrez*, 2005 WL 1994289, at *8 (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (explaining that plaintiff must "show that he could and would have adduced evidence that might have altered the result") (internal quotation marks omitted)); *see also Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997)

(Fitzwater, J.).  "Here, [Gonzales] makes no argument that [he] was prejudiced by the lack of a physician statement detailing [his] ability to perform work-related activities." *Gutierrez*, 2005 WL 1994289, at *7.  Accordingly, reversal would not be warranted in this case even if the ALJ had failed to fully develop the record.

V

Gonzales contends that the ALJ erred at step four by not following the proper procedure when calculating Gonzales' past work and determining whether he can perform his past work.  Gonzales maintains that the ALJ committed two errors: first, he did not explain how he determined the classification of Gonzales' past work; and, second, he failed to make a specific finding regarding the physical and mental demands of his past work.

A

1

Gonzales first posits that the ALJ classified his past work as a supervisor landscaper, as defined in the Dictionary of Occupational Titles ("DOT"), without explaining how he arrived at this classification and without testimony from a qualified VE identifying Gonzales' past work.  Gonzales also asserts that this classification is contrary to the evidence, because the ALJ found that a supervisor landscaper is a *skilled* job, and the record shows that Gonzales only completed the third grade and thus only has a "marginal education" (i.e., the ability "to do simple, *unskilled* types of jobs").   P. Br. 13 (quoting 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2)) (emphasis added).

- 25 -

The Commissioner responds that substantial evidence supports the ALJ's classification of Gonzales' past work.  She avers that the ALJ clearly explained in his decision that he based the classification on Gonzales' testimony that he supervised several landscaping crews and oversaw his employer's irrigation services at several properties.  The Commissioner also maintains that VE testimony is not required when, as here, a claimant is found not disabled at step four.  And the Commissioner posits that Gonzales' reliance on the DOT's description of a supervisor landscaper is misguided because the DOT's descriptions represent the maximum requirements of occupations as generally performed, not the range or requirements of a particular job as it is performed in specific settings, and a listed job may be performed at a lower level than the DOT's description.  The Commissioner maintains that the present case is an example of a listed job that may be performed at a lower level than the DOT's description because Gonzales supervised several landscaping crews, despite his third-grade education.

2

The court concludes that substantial evidence supports the ALJ's classification of Gonzales' past work as a supervisor landscaper, as defined in the DOT.  Past relevant work "is work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1).  The ALJ explained that he classified Gonzales' past work as supervisor landscaper because Gonzales testified that he had performed this work.  Gonzales testified

that "[he] was running . . . the irrigation"; that his employer "gave [him] two crews to watch over that were doing mowing"; and that "[he] was the one that was in charge of that property, so if they had any questions or anything they would . . . bring them to [him]." R. 78. The ALJ's determination is also consistent with other evidence in the record, such as Gonzales' work history report that states he performed "landscaping" from 2001 until 2004 and from 2009 until June 2010, and that in all the jobs he had in the 15 years before becoming unable to work, he supervised five people all day, hired and fired employees, and was a lead worker.

Additionally, the ALJ's classification of Gonzales' past work is reconcilable with Gonzales' educational level. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Policy Interpretation Ruling : Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000) (hereinafter "SSR 00-4P"). Thus the fact that Gonzales did not have the maximum mental capability listed in the DOT for a supervisor landscaper does not necessarily conflict with the classification of supervisor landscaper, especially considering that Gonzales testified that he has in fact performed this type of work.

The ALJ also did not err by classifying Gonzales' past work without the assistance of a VE, because "the testimony of a VE is not required when the ALJ determines at step four that a claimant can perform her past relevant work." *Johnson v. Astrue*, 2010 WL 4722275,

at *9 (N.D. Tex. Nov. 22, 2010) (Fitzwater, C.J.) (citing *Talbert v. Shalala*, 44 F.3d 1004, 1994 WL 733486, at *5 n.6 (5th Cir. Dec. 27, 1994) ("This testimony was not necessary because the ALJ determined at step four that [the claimant] could perform her past relevant work and was not disabled.")); *see also* SSR 00-4P, at *2 (explaining that, at steps 4 and 5, ALJs "rely primarily on the DOT . . . for information about the requirements of work in the national economy," but that ALJs "may also use VEs . . . to resolve complex vocational issues").  Accordingly, the court concludes that substantial evidence supports the ALJ's classification of Gonzales' past work as a supervisor landscaper.

## B

### 1

Gonzales next contends that the ALJ concluded that he could perform his past work as a supervisor landscaper without making a specific finding regarding the physical and mental demands of this past work, as required by *Social Security Ruling: Program Policy Statement Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General*, SSR 82-62, 1982 WL 31386, at *4 (S.S.A. Nov. 30, 1981) (hereinafter "SSR 82-62").  Gonzales posits that the ALJ erred by using generic terms to describe his past work, and concluding on the basis of his RFC that he can perform his past work.

The Commissioner responds that the ALJ documented his findings in compliance with SSR 82-62, and that substantial evidence supports the ALJ's determination that Gonzales could perform his past work as a supervisor landscaper.

- 28 -

2

At step 4, the claimant bears the burden of showing that he cannot perform his past relevant work. *See Leggett*, 67 F.3d at 564. When determining whether a claimant retains the RFC to perform his past relevant work, the ALJ can look either to (1) the job duties peculiar to an individual job as the claimant actually performed it, or to (2) the functional demands and job duties of the occupation as generally required by employees throughout the national economy. *Social Security Ruling: Program Policy Statement Titles II and XVI: Past Relevant Work—The Particular Job or The Occupation As Generally Performed*, SSR 82-61, 1982 WL 31387, at *1-2 (S.S.A. Nov. 30, 1981) (hereinafter "SSR 82-61"). If the ALJ determines that the claimant retains the RFC to perform a past relevant job, the decision must contain the following specific findings: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82-62, at *4. Additionally, if the ALJ determines that the claimant can return to his prior work, he must "directly compare the applicant's [RFC] with the physical and mental demands of [his] previous work." *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994).[8] The categories "light" and "medium" work are "generic" terms that do not address

_____

[8]This statement in *Latham* is dicta. "The court remanded the case to the ALJ based on the presence of new available evidence, not on the ALJ's verbal formulation in describing the claimant's past work." *Bennett v. Astrue*, 2010 WL 308747, at *4 n.1 (N.D. Tex. Jan. 27, 2010) (Fitzwater, C.J.) (citing *Latham*, 36 F.3d at 483). "The court appears to have intended the comment to be additional instruction to the ALJ on remand." *Id.* (citing *Latham*, 36 F.3d

- 29 -

all barriers to returning to past relevant work, and a generic analysis does not sufficiently explain how a claimant's impairments do not prevent him from returning to work. *Id.*

3

The court holds that the ALJ did not fail to make a specific finding regarding the demands of Gonzales' past work as required by SSR 82-62. The ALJ determined that Gonzales has the RFC to perform the full range of light work.[9] He then found that Gonzales "has past relevant work as a supervisor, landscaper (D.O.T. # 406.134-041), light and skilled, SVP 6," and concluded that "a hypothetical individual of the same age, education, work experience as [Gonzales], and with the [RFC] I found, would be able to perform [Gonzales'] past work as a supervisor landscaper." R. 52.

The court addressed a similar issue in *Bennett v. Astrue*, 2010 WL 308747 (N.D. Tex. Jan. 27, 2010) (Fitzwater, C.J.). In *Bennett* the ALJ found at step four that the claimant's "past work as a maintenance repair builder was skilled at the medium exertional level and his work as a maintenance supervisor was skilled at the light exertional level." *Id.* at *3. The ALJ concluded that "[i]n comparing the claimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually

at 484 ("Latham has [also] raised possible problems [with the ALJ's decision]. . . , which the Secretary should also consider when this case is remanded[.]")). "Even so, it is firmly rooted in circuit precedent and in the Social Security Regulations." *Id.*

[9]The ALJ found that Gonzales has the RFC to "perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)," and that "he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand or walk 6 hours in an 8-hour workday. His postural and other work functions are not affected." R. 48.

and generally performed." *Id.* The claimant argued that the Commissioner's decision should be reversed because "these two sentences [were] brief and generic," and "violate[d] relevant regulations." *Id.* This court, however, held that *Latham* did not require reversal of the ALJ's decision. *Id.* at *4. The court explained:

> In *Latham* the ALJ found that the claimant had a number of nonexertional limitations. In describing the claimant's capacity to return to work, however, the ALJ discussed categories that "refer[red] only to exertional capabilities and [did] not address mental or emotional barriers to a return to previous employment." The *Latham* panel therefore faulted the ALJ for failing to "explain how these impairments do not prevent Latham from returning to his previous people-oriented employment."

*Id.* (alterations in original) (footnote and internal citations omitted) (quoting *Latham*, 36 F.3d at 484) (citing *Holman v. Astrue*, 2009 WL 3047418, at *10-11 (N.D. Tex. Sept. 11, 2009) (Averitte, J.), *rec. adopted*, 2009 WL 3047418, at *1 (N.D. Tex. Sept. 23, 2009) (Robinson, J.) (holding that ALJ did not commit reversible error by using generic terms)). This court explained in *Bennett* that the ALJ found no non-exertional impairments, and because this finding was supported by substantial evidence, the ALJ did not commit reversible error by failing to address the mental requirements of the claimant's previous work. *Id.* (citing *Rose v. Apfel*, 181 F.3d 943, 945 (8th Cir. 1999) (rejecting contention that ALJ erred in failing to make specific findings regarding mental demands of claimant's past work where ALJ had already determined that mental limitations did not significantly affect claimant's ability to work, and there was substantial evidence that claimant did not have severe mental

impairment)); *see also Shearer v. Astrue*, 2008 WL 5136949, at *4 (N.D. Tex. Nov. 13, 2008) (Bleil, J.) (rejecting contention that ALJ erred by failing to address mental demands of claimant's past relevant work where claimant had no severe mental impairment; there was no evidence that her mental abilities otherwise declined after she ceased working as bakery manager; ALJ found no work-related mental restrictions; and claimant had not shown that ALJ's failure to assess mental restrictions was unsupported by substantial evidence), *rec. adopted*, (N.D. Tex. Dec. 5, 2008) (McBryde, J.).

In the present case, the ALJ found that Gonzales had no severe mental impairments and no mental limitations, and the court has already concluded that substantial evidence supports these findings  *See supra* at § III(A)(3), (B)(2).  The ALJ therefore did not err by failing to address the mental demands of Gonzales' past work.  *See Rose*, 181 F.3d at 945; *Bennett*, 2010 WL 308747, at *4.  The ALJ also did not err by describing the physical demands of Gonzales' past work as "skilled" and "light."  *See Bennett*, 2010 WL 308747, at *3-4 (using similar terms to describe the physical demands of claimant's past work).[10] Accordingly, the court holds that the ALJ's findings as to the demands of Gonzales' past

---

[10]In addition to *Latham*, Gonzales cites *Hines v. Barnhart*, 2003 WL 23323615 (N.D. Tex. June 5, 2003) (Bleil, J.), *rec. adopted*, (N.D. Tex. July 8, 2003) (Means, J.), in which the court determined that the ALJ's findings as to the demands of claimant's past work were too vague.  But the *Hines* court remanded the case on other grounds.  *Id.* at *5-6 (remanding based on Appeals Council's failure to consider new evidence).  Moreover, even if *Hines* is indistinguishable from this case, decisions of other judges of this court are not binding as the "law of the district."  *See SEC v. Cuban*, 798 F.Supp.2d 783, 788 (N.D. Tex. 2011) (Fitzwater, C.J.).  The court therefore adheres to its prior decision in *Bennett* and declines to follow *Hines* to the extent the two cases are inconsistent.

work do not violate SSR 82-62 or *Latham*.

\* \* \*

For the reasons explained, the Commissioner's decision is

AFFIRMED.

January 11, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE